KRISTOPHER EMBRY                                  CIVIL ACTION

VERSUS                                                    NO. 19-1474

HIBBARD INSHORE, LLC                           SECTION "R" (2)


## ORDER AND REASONS

Before the Court are (1) defendant Hibbard Inshore, LLC's motion to dismiss for lack of personal jurisdiction, and (2) plaintiff Kristopher Embry's motion to remand.[1] The Court grants defendant's motion to dismiss because plaintiff has not shown that defendant has minimum contacts with the state of Louisiana. The Court denies plaintiff's motion to remand as moot.


## I.    BACKGROUND

This case arises from an employment dispute.[2] Plaintiff alleges that he was employed by Hibbard Inshore from 2014-2018 as a Client Relationship Manager.[3] Hibbard Inshore is a Michigan-based organization with clients in many different locations.[4] Plaintiff's duties for Hibbard Inshore included

---

[1]    R. Doc. 3; R. Doc. 11.
[2]    R. Doc. 1-3.
[3]    *Id.* at 1.
[4]    R. Doc. 3-8; R. Doc. 3-9.

attending sales conferences, making sales calls, crafting proposals and estimates for potential clients, and maintaining relationships with existing clients.[5] Plaintiff completed these tasks remotely, and he traveled to Hibbard Inshore's Michigan office only about once per year.[6] During the second half of his employment with Hibbard Inshore, plaintiff allegedly worked for part of the year from his home in New Orleans, Louisiana.[7] Plaintiff attests that he informed Hibbard Inshore of his intention eventually to work remotely from New Orleans before he was hired.[8] He states that, from 2016 until his termination, he made and received sales calls that involved both potential and existing clients from his home office in New Orleans.[9] He also allegedly attended trade shows and business meetings in New Orleans, and he allegedly took clients to dinner on behalf of Hibbard Inshore when they were in town.[10] Finally, plaintiff states that he once hired a woman based in New Orleans to translate a set of contracts used in a Hibbard project.[11] Plaintiff

---

[5]     R. Doc. 3-3 at 1.
[6]     R. Doc. 17-1 at 4 ¶ 17.
[7]     R. Doc. 17-1 at 1 ¶ 5.
[8]     *Id.* ¶ 3.
[9]     *Id.* at 2 ¶ 5.
[10]    *Id.* ¶ 7.
[11]    *Id.* at 3 ¶ 8.

allegedly met the employee in New Orleans, reviewed her work in New Orleans, and paid her in New Orleans on behalf of Hibbard Inshore.[12]

Plaintiff alleges that defendant terminated his employment unexpectedly on June 26, 2018.[13] As part of the termination process, defendant allegedly provided plaintiff with a separation agreement.[14] According to plaintiff, this agreement contained terms that were unfavorable to him.[15] Plaintiff alleges that he therefore refused to sign the agreement.[16] At the time of plaintiff's termination, defendant allegedly owed him vacation pay and commissions on accounts that he sold before his termination.[17] Defendant allegedly refused to pay the amounts owed.[18] Shortly after his termination, plaintiff filed for unemployment benefits in Pennsylvania.[19]

On December 19, 2018, plaintiff filed a petition for damages in Orleans Parish Civil District Court seeking his unpaid wages, penalty wages, attorney's fees, costs, and interest pursuant to the Louisiana Wage Payment Act.[20] On February 15, 2019, defendant removed the case to this Court on

---

[12] *Id.*
[13] R. Doc. 1-3 at 1.
[14] *Id.*
[15] *Id.* at 1-2.
[16] *Id.* at 2.
[17] *Id.*
[18] *Id.*
[19] R. Doc. 3-6.
[20] R. Doc. 1-3.

the basis of the Court's diversity jurisdiction.[21]  Defendant then filed a motion to dismiss for lack of personal jurisdiction.[22]  Plaintiff opposes the motion.[23]

Plaintiff also filed a motion to remand shortly after the case was removed to federal court.[24]  Defendant opposes the motion.[25]  In response to the motion, defendant requested and was granted leave to file an amended notice of removal that addresses the issues raised in plaintiff's motion to remand.[26]  On April 10, 2019, defendant filed an amended notice of removal.[27]

## II.    LEGAL STANDARD

Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (alterations and internal quotation marks omitted).  A district court may exercise personal jurisdiction over a defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the

---

[21]    R. Doc. 1.
[22]    R. Doc. 3.
[23]    R. Doc. 17.
[24]    R. Doc. 11.
[25]    R. Doc. 13.
[26]    R. Doc. 14; R. Doc. 30.
[27]    R. Doc. 31.

exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Because Louisiana's long-arm statute, La. R.S. 13:3201, extends jurisdiction to the limits of due process, the Court need only consider whether the exercise of jurisdiction in this case satisfies federal due process requirements. *Dickson Mar. Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

Personal jurisdiction may be either general or specific. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "The plaintiff bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence." *Id.* at 270. General jurisdiction over a foreign defendant exists if the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Fifth Circuit has articulated a three-step inquiry to determine whether specific jurisdiction exists. *Seiferth*, 472 F.3d at 271. First, the plaintiff must show that "the defendant has minimum contacts with the forum state, *i.e.*, . . . it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* Second, the plaintiff must show that his "cause of action arises

out of or results from the defendant's forum-related contacts." *Id.* If the plaintiff makes these showings, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Id.*

When the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). But the district court is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## III. DISCUSSION

Defendant argues that the Court must dismiss plaintiff's claims because this Court does not have personal jurisdiction over the defendant.[28]

The Court may adjudicate plaintiff's claims if it has either general or specific jurisdiction over the defendant. Plaintiff does not argue that the Court has general jurisdiction, and the Court finds that it does not. General

---

[28] R. Doc. 3-1 at 4.

jurisdiction over a non-resident defendant exists only if the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. Hibbard Inshore's state of incorporation and its principal place of business are both Michigan.[29] There is no evidence that the company has a connection to Louisiana other than the work done by plaintiff in Louisiana. Thus, there is no showing that Hibbard Inshore is subject to general personal jurisdiction here. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that for a corporation, "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").

Turning to specific jurisdiction, plaintiff has the burden of first making a *prima facie* showing that defendant has purposefully availed itself of the privilege of conducting activities in the state of Louisiana such that it invoked the benefits and protection of that state's laws and created minimum contacts. *Seiferth*, 472 F.3d at 271. Second, plaintiff must show that his cause of action is related to defendant's contact with the forum. *Id.* To determine whether a business has the necessary minimum contacts, courts look at many factors, including: (1) whether the defendant has a physical

---

[29]    R. Doc. 3-8; R. Doc. 3-9.

presence in the state, (2) whether the defendant conducts business in the state, (3) whether the contract underlying the business transaction at issue was signed in the state, and (4) whether the contract at issue called for performance in the state. *Monkton Ins. Servs.*, 768 F.3d at 433.

But it is well-settled that an employee's personal contacts with a forum are not automatically attributed to their employer. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* at 474; *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (holding that the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" (internal quotation marks omitted)). The unilateral actions of an employee do not create minimum contacts in a forum for his employer unless there is evidence that the employer purposefully availed itself of the benefits and protections of the laws of the forum. In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id.*

Here, there is no evidence that Hibbard Inshore, as opposed to the plaintiff, created minimum contacts with the state of Louisiana. Plaintiff has submitted an affidavit attesting to the following facts in support of the

Court's jurisdiction over the defendant: (1) plaintiff informed defendant when he was hired that in the future he intended to work at least partly from Louisiana; (2) he made and received both sales calls to potential clients and project update calls with existing clients from his residence in New Orleans; (3) he often took business trips in and out of the New Orleans airport, which he alleges saved the defendant money because New Orleans was closer to his destinations than Michigan, where Hibbard Inshore's office is located, or Pennsylvania, where he lived when he was not in New Orleans; (4) he attended trade shows, conferences, and business meetings in New Orleans; (5) he took clients to dinner in New Orleans when they were in the city; (6) he once retained a New Orleans-based translator to work on a project for defendant and paid her on behalf of defendant in New Orleans; (7) he solicited clients in the southeastern United States and used his location in New Orleans as a selling point; (8) he purchased office supplies and sent packages via Hibbard's Fedex account in New Orleans; (9) he received packages, stored marketing materials, and used a computer owned by defendant in his New Orleans home.[30] Plaintiff also points to a nondisclosure agreement that he signed in 2014, which states that all business materials had to remain on defendant's property. Plaintiff argues

---

[30]    R. Doc. 17-1.

that this contractual language indicates that defendant considered plaintiff's home office in New Orleans company property.[31]

These facts demonstrate a relationship between plaintiff and the state of Louisiana, but they do not show that defendant purposely directed its activities toward the state or purposefully availed itself of the privileges of conducting activities here. While plaintiff worked partly from Louisiana for the second two years of his employment, he did so of his own volition and not at the direction of the defendant. Defendant attests that it has never been licensed or authorized to conduct business in Louisiana, and that it has never leased, rented, or owned property in Louisiana.[32] Plaintiff presents no evidence contradicting these statements. Plaintiff's assertion that his home became the defendant's office based on the terms of the nondisclosure agreement is unavailing. There is no evidence that defendant leased or owned the space. A nondisclosure agreement does not transform the plaintiff's personally-owned residence into his employer's office absent any intent or financial contribution by the employer. With regard to Hibbard Inshore's business activities, plaintiff does not allege that Hibbard ever directed him to reach out to potential clients in Louisiana or that it hoped to

---

[31] *Id.* at 5.
[32] R. Doc. 3-8 at 1.

target businesses in the state. Indeed, plaintiff does not name even one client of defendant's domiciled in Louisiana. As evidence of defendant's work in Louisiana, plaintiff points to leveraging his proximity to potential clients based in Savannah, Georgia and Houston, Texas.[33] Connections to these businesses in other states do not establish a connection to Louisiana.

Further, plaintiff has not shown precisely how much time he spent in Louisiana from 2016-2018. Plaintiff traveled frequently for work,[34] and his clients appear to have been based on the East and West Coasts.[35] Plaintiff's job entailed "flying to the location of the customer and developing the sale at the location of the client."[36] That plaintiff's frequent travel reduced the amount of time he worked from New Orleans, that his work occurred mostly at client sites, and that defendant did not assign him to a particular base of operations suggest that defendant was agnostic as to where plaintiff spent his time while he was not traveling. Indeed, defendant represents that plaintiff was hired to develop business on the East and West Coasts.[37] Plaintiff's representation that he did a majority of his work from New Orleans is also undermined by a communication indicating that his pay stub did not

---

[33] R. Doc. 17-1 at 3.
[34] R. Doc. 17-1 at 2 ¶ 6.
[35] R. Doc. 3-8 at 2 ¶ 11.
[36] *Id.*
[37] *Id.*

reflect a New Orleans address until after April 30, 2018,[38] and by his decision to apply for unemployment in Pennsylvania immediately after his termination.[39] Having one employee work from his home while not at client sites does not establish a connection between the defendant and Louisiana. Nor does plaintiff's decision to use a New Orleans-based translator to whom defendant made a single payment after the work was completed establish personal jurisdiction.

In cases where other district courts have held that an employer with a remote employee was subject to personal jurisdiction where the employee lived, the courts focused on the employer's purposeful outreach to recruit an employee from that state. *See Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 499, 512 (E.D. Ky. 2019) (holding that employer's contact with Kentucky was not the result of the plaintiff's unilateral conduct because the employer "recruited Plaintiff in Kentucky, sent a signed contract to Plaintiff in Kentucky, and engaged in a close working relationship with Plaintiff in Kentucky for a substantial period of time"); *Williams v. Preeminent Protective Servs. Inc.*, 81 F. Supp. 3d 265, 272 (E.D.N.Y. 2018) (holding that employer purposefully availed itself of the forum "when they hired plaintiff

---

[38] R. Doc. 23-3.
[39] R. Doc. 3-6.

to conduct their marketing and communications while she lived in Brooklyn").  Defendant did not go to the state of Louisiana to recruit the plaintiff, because at the time defendant hired plaintiff and negotiated his employment contract, plaintiff lived in Pennsylvania.[40]  Plaintiff's contract was not negotiated or signed in Louisiana, and plaintiff had no connection to Louisiana at the time he was hired.  He merely stated that he had plans to live in Louisiana part time at some point in the future.  Plaintiff did not begin to work from Louisiana until two years after being hired.

Courts have also focused on whether the employer preferred or required that the employee work in the forum state.  *See Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 260 (W.D.N.Y. 2018) (holding that personal jurisdiction existed when employer hired plaintiff "with the express agreement from the outset, that she would work from New York," and the employer "affirmatively did not want her at its corporate office in New Jersey" (internal quotation marks and alternations omitted)); *cf. File Image Servs., LLC v. Klein*, No. 09-484, 2009 WL 2412443, at *2 (E.D. Wis. 2009) (holding that even if "defendants were fully aware that the plaintiff had relocated to Wisconsin, this is insufficient to cause the defendants to be subject to the jurisdiction of Wisconsin courts" when "[t]here [was] no

---

[40]     R. Doc. 3-3 at 1.

suggestion that the contract specified where the work was to be performed"). Plaintiff provides no evidence that defendant wanted him to work from Louisiana. At most, defendant passively acquiesced in his decision to move there while he was not visiting client sites. A failure to object affirmatively to an employee's unilateral decision does not constitute purposeful availment.

Multiple other district courts have held that minimum contacts were not established when the plaintiff employee was the only employee in the state, and the employer passively allowed the plaintiff to move to that state, or the employment contract did not require that the work be performed in a particular location. *See Jeffs v. World Monuments Fund, Inc.*, No. 17-198, 2017 WL 4864981, at *4 (E.D. Pa. 2017) (finding no minimum contacts when contract was negotiated outside of Pennsylvania, plaintiff was "neither instructed nor required to live in Pennsylvania," and, although plaintiff attended meetings in Pennsylvania on defendant's behalf, "nothing in the record indicates that Plaintiff was required to solicit business in Pennsylvania as a condition of his employment"); *Rosenberg v. Deutsche Bank AG*, No. 11-02200, 2012 WL 3744632, at *5 (D. Colo. May 22, 2012), *adopted by* No. 11-02200, 2012 WL 3744631 (D. Colo. Aug. 28, 2012) (finding no minimum contacts when it was "undisputed that it was Plaintiff's

unilateral decision to relocate to Colorado"); *Wright v. Zacky & Sons Poultry, LLC*, 105 F. Supp. 3d 531, 540 (M.D.N.C. 2015) (finding no minimum contacts when "neither [plaintiff's employer] nor the contract required him to be in North Carolina while performing those duties" and defendant merely acquiesced to plaintiff's trips to North Carolina where he would work from home). Judge Martin Feldman in this district has also held that, in similar circumstances, employing a remote worker did not establish minimum contacts. *See Sciortino v. CMG Capital Mgmt. Grp., Inc.*, No. 16-11012, 2016 WL 4799099, at *6 (E.D. La. Sept. 14, 2016). In *Sciortino*, a defendant employer in a Louisiana Wage Payment Act case did not establish minimum contacts by hiring an employee who worked mainly from his home office in Louisiana because, among other reasons, defendant did not maintain an office or own property in Louisiana; the plaintiff applied for the position from outside of Louisiana and negotiated the terms of his employment outside of Louisiana; plaintiff was the only employee who resided in Louisiana; and plaintiff's benefits were administered in another state. *Sciortino*, No. 16-11012, 2016 WL 4799099, at *4-6. The Court finds that the facts and reasoning of *Sciortino* and the other district court cases finding that minimum contacts were not established are analogous to those in this case, where plaintiff also negotiated his employment contract outside

15

the state, was the only employee in the state, and had his benefits administered outside the state.

The relevant case law establishes that when a person working remotely makes a unilateral decision to move after being hired, an employer's mere acquiescence or indifference to the employee's decision does not constitute purposeful availment of the benefits of a state and protection of its laws when the employer is not conducting business in the state. Accordingly, plaintiff has not met his burden of establishing a *prima facie* showing of defendant's minimum contacts with the state of Louisiana.

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is GRANTED. Plaintiff's motion to remand is DENIED AS MOOT.

New Orleans, Louisiana, this __1st__ day of July, 2019.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE